944 So.2d 1122 (2006)
The STATE of Florida, Appellant,
v.
Eddie SIMMONS, Appellee.
No. 3D05-1437.
District Court of Appeal of Florida, Third District.
December 6, 2006.
*1123 Charles J. Crist, Jr., Attorney General, and Douglas J. Glaid, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, for appellee.
Before COPE, C.J., and FLETCHER and ROTHENBERG, JJ.
FLETCHER, J.
Pursuant to mandate from the Florida Supreme Court,[1] the trial court held an evidentiary hearing to determine whether the identity of a confidential informant used by the State herein was required to be disclosed, and whether the State was able to produce the informant. Eddie Simmons was charged with selling cocaine on April 4, 2002 to an undercover officer and was further charged with the intent to sell, manufacture, or deliver cocaine on April 5, 2002, as well as being charged with possession of a firearm by a convicted felon.

*1124 APRIL 4, 2002

The informant's interaction with the April 4 events leading to the charge of that date was limited to the informant's pointing out the drug sale location (a house), and the informant's greeting the drug seller at that house just prior to the "hand to hand" transaction. The trial court found that "[t]he informant had an ample opportunity to observe the person who sold drugs" to the undercover police officer. As Simmons' defense to the April 4 charge was misidentification, the trial court concluded that the informant was a material witness on the issue of the identity of the drug seller, thus the informant's identity had to be disclosed.

APRIL 5, 2002
With a search warrant in hand, on April 5, 2002, the police returned to the house where they found additional cocaine, a firearm, and Simmons. Additional charges on Simmons resulted. His defense to these charges was that he was present in the house as a guest when the drugs and firearm were found, but he had no knowledge of them or possessory interest in them.
Simmons sought disclosure of the confidential informant's identity in relation to these charges, as well as the April 4 charge. Simmons argued that the informant's expected testimony (that it was not Simmons who sold the cocaine on April 4) would bolster his assertions as to April 5 (that he was a guest and had no control over the seized items).

THE TRIAL COURT'S RULING
"The Court finds that the informant is a material witness on the issue of the identity of the drug seller, that the defense of misidentification is a bona fide defense, that disclosure of the informant's identity is required due to the defense asserted, and that the State is not able to produce such person. The Court dismisses the information. . . . "
We agree with the trial court's dismissal of the April 4 charge. We cannot agree with the trial court's dismissal of the charges as to April 5.
The United States Supreme Court, in Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), discussed fundamental fairness in relation to the prosecutorial privilege to withhold from disclosure confidential informants' identities: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."
The Florida Supreme Court, in Simmons v. State, 887 So.2d 1283, 1284 (Fla. 2004), citing Roviaro stated: "This privilege, however, must yield where the informant's identity is . . . essential to a fair determination of the cause at issue." Agreeing that the informant's identity is essential to a fair determination of the April 4 charge, we affirm the trial court's dismissal of the charge related to April 4.
However, as to the charges related to April 5 we reverse the dismissals. The informant was not involved with these charges. A misidentification on April 4 would not be a defense to the charges of April 5. The trial court thus abused its discretion by dismissing the April 5 charges.[2]
*1125 Affirmed in part; reversed in part; and remanded for further proceedings consistent herewith.
COPE, C.J., concurs.
ROTHENBERG, J., concurring in part and dissenting in part.
We have for review in this consolidated appeal the trial court's dismissal of two separate informations: one charging Eddie Simmons ("Simmons") in case number 02-9992 with the sale, manufacture, delivery and/or possession of cocaine on April 4, 2002; and the other, charging Simmons in case number 02-9991 with possession with intent to sell, manufacture, and/or deliver cocaine and unlawful possession of a firearm by a convicted felon on April 5, 2002. The first offense is based upon the purchase of cocaine by Detective Pacheco from an individual he claims is the defendant, and the remaining offenses are based upon evidence seized pursuant to the execution of a search warrant the following day at the house where the detective purchased the drugs. The majority concludes that the trial court erred in dismissing the charges against Simmons in case number 02-9991, the April 5th, offenses. I agree. I disagree, however, with the majority's conclusion that the trial court did not err in dismissing the charges regarding the April 4th drug transaction charged in case number 02-9992.

PROCEDURAL HISTORY
When Detective Pacheco purchased cocaine on April 4, 2002, he was accompanied by another individual. Simmons' defense to this case (02-9992) is one of misidentification. He claims he is not the person who sold cocaine to the detective. His defense in case number 02-9991 is that he was merely a guest in the residence when the search warrant was executed and the cocaine and firearm were seized. Simmons filed a sworn motion in both cases seeking an order to require the State to disclose the identity of the individual who accompanied the detective on April 4th, when the detective purchased the cocaine. In this motion, Simmons claimed that the witness would substantiate his defense of misidentification in case number 02-9992, which would in turn buttress his claim in case number 02-9991 that, although he was present in the house on April 5th when the search warrant was executed, he was merely there as a guest and had no dominion or control over the items seized.
The State argued that disclosure was not required as the individual who accompanied Detective Pacheco when he purchased the drugs on April 4th was not involved in the transaction nor involved in the procurement of the search warrant and was not present when it was executed. The trial court concluded that disclosure of "the confidential informant" was required based upon Simmons' defense of misidentification. When the State was unable to produce the individual in question for an in-camera hearing because the police had failed to obtain either his identity or other identifying information, and his whereabouts was unknown, the trial court dismissed the charges in both cases. The State appealed and this court reversed, finding that the disclosure of the "identity of an informant who is a mere witness to, but a non-participant in a criminal episode" is not required merely because the defendant raises a misidentification defense. State v. Simmons, 887 So.2d 355, 359 (Fla. 3d DCA 2003). This court, however, noted and certified conflict with McCray v. State, 730 So.2d 817 (Fla. 2d DCA 1999). Simmons, 887 So.2d at 359.
The Florida Supreme Court accepted jurisdiction based upon the certification of conflict. However, due to the inadequacy of the record before it, the Court quashed *1126 this court's decision with instructions to remand to the trial court for further factual development to enable a determination to be made whether, as a matter of law, disclosure of the informant's identity is required and whether he could be produced. Simmons v. State, 887 So.2d 1283 (Fla.2004).
The trial court conducted a hearing in accordance with this ruling. Based upon the testimony of the witnesses, the trial court dismissed the charges finding that the informant was a material witness whose identity the State was required to disclose and that, although the failure of the police to obtain any contact information regarding the person in question was not in bad faith, "the decision not to obtain such information was a deliberate choice that has prejudiced the defendant in the preparation of his defense."

THE EVIDENCE
Officer Cabrera of the Miami Police Department testified that the individual in question, who he referred to as a "crackhead," had a street nickname of "Coco" and that he frequented the area where Officer Cabrera worked off-duty. Officer Cabrera testified that "Coco" approached him and informed him that people were selling drugs from a particular house. Based on this information, he set up a time and place for "Coco" to meet with Detective Pacheco, an undercover officer. Prior to the meeting, Officer Cabrera related this information to Detective Pacheco. Officer Cabrera did not obtain any additional information from "Coco," did not know his true name or where he lived, and had no further contact with him.
Detective Pacheco met with "Coco," who agreed to accompany him to the house in question. When they approached the house, a man whom the Detective identified as the defendant, Eddie Simmons, was standing in the front doorway. Detective Pacheco and "Coco" proceeded to the front door. "Coco" said "hi" to the defendant and the detective asked the defendant if he had any "hard," a term referring to crack cocaine. After Detective Pacheco and Simmons conversed, Simmons went inside the house briefly, returned, and handed the detective two cocaine rocks in plastic bags. Simmons then told Detective Pacheco that for future buys he should knock at the window at the back of the house and that he would "take care of him." After Simmons showed Detective Pacheco the window, Detective Pacheco and "Coco" left. Detective Pacheco explained that he did not feel that it was necessary to ask "Coco" any questions regarding his identity or where he lived because "Coco" was not involved in the transaction (he did not make any of the arrangements, was not an active participant, and did not have any conversations with the defendant other than to say "hi" as they were approaching) and he did not intend to use him in the future. Furthermore, the conversations between Detective Pacheco and Simmons were in English and the detective claims that "Coco" knew very little English. Detective Pacheco testified that he never anticipated that, under the circumstances, "Coco" would become a necessary witness in the case.
The trial court found the testimony of the officers to be credible and "that their failure to obtain the informant's contact information was not in bad faith in an effort to subvert a possible future defense of misidentification." As the trial court's factual findings are supported by substantial competent evidence, they must be sustained. Connor v. State, 803 So.2d 598, 607-08 (Fla.2001).
While the trial court concluded that the failure to obtain the informant's contact information was not in bad faith, it concluded *1127 that because the decision to not obtain this information was a "deliberate choice that has prejudiced the defendant in the preparation of his defense," dismissal of the charges is required. As this determination rests upon a purely legal issue, whether the trial court correctly applied the law to the facts, we review that determination de novo. Connor, 803 So.2d at 605-06.

LEGAL ANALYSIS
Our analysis must begin with recognition of well-settled Florida law which grants the State a limited privilege to withhold the identity of its confidential informants. See State v. Hassberger, 350 So.2d 1, 2 (Fla.1977); State v. Diaz, 678 So.2d 1341, 1344 (Fla. 3d DCA 1996); State v. Zamora, 534 So.2d 864, 867 (Fla. 3d DCA 1988). This privilege, however, must yield "`[w]here the disclosure of an informer's identity, or the contents of his communication, [1] is relevant and helpful to the defense of an accused, or [2] is essential to a fair determination of a cause.'" Diaz, 678 So.2d at 1344 (quoting Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). The burden is on the defendant to establish why either or both of these exceptions should be invoked. Diaz, 678 So.2d at 1344.
Simmons argues that he has satisfied his burden as to both exceptions and thus, the failure of the State to disclose the identity of the informant requires dismissal of all of the charges levied against him. Simmons claims that the informant would testify that Simmons is not the individual who sold the drugs to Detective Pacheco. At this point, his claim is nothing more than a bare assertion, a claim based solely upon speculation. Simmons does not allege that he knows this individual or that he has had any contact with him other than the encounter in question, a contact wherein the informant merely stood nearby but had no involvement in the conversation or transaction. The record does not reflect, nor is there any evidence to suggest, that the informant has ever purchased drugs at that location. However, despite the conclusory nature of Simmons' claim, we conclude that he would be entitled to an in-camera hearing to determine whether his claim is in fact true and whether the informant would in fact substantiate his defense of misidentification. The issue which must, therefore, be resolved, is whether dismissal is mandated as a matter of law when an in-camera hearing cannot be held due to law enforcement's failure to obtain the identity or contact information of the individual in question.
Simmons relies upon Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), Miller v. State, 729 So.2d 417 (Fla. 4th DCA 1999), McCray v. State, 730 So.2d 817 (Fla. 2d DCA 1999), State v. Fuentes, 563 So.2d 96 (Fla. 3d DCA 1990), State v. Zamora, 534 So.2d 864 (Fla. 3d DCA 1988), and State v. Jones, 247 So.2d 342 (Fla. 3d DCA 1971), in support of his proposition that disclosure of the informant is mandated, and that law enforcement's failure to obtain the informant's identity and contact information warrants dismissal of the charges. A review of these cases, however, does not suggest such a finding.
In Roviaro, the Supreme Court of the United States provided that:
The principal issue is whether the United States District Court committed reversible error when it allowed the Government to refuse to disclose the identity of an undercover employee who had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence *1128 of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged. For the reasons hereafter stated, we hold that, under the circumstances here present, this was reversible error.
Roviaro, 353 U.S. at 54-55, 77 S.Ct. 623 (emphasis added). The Court in Roviaro specifically noted that the informant assisted law enforcement in setting up the drug transaction and played a prominent role in it; the informant might be able to provide testimony to support a defense of entrapment; the informant was the only witness who might be able to testify as to the defendant's knowledge or lack of knowledge of the contents of the package; the Government relied upon the defendant's conversation with the informant, which took place in the informant's car, as evidence inculpating the defendant without providing the defendant with the ability to confront that evidence; and the informant was the sole participant other than the defendant. Roviaro is distinguishable, and therefore, inapplicable to the instant case. In the instant case, the State is not refusing to disclose the informant's identity; the informant did not play an active role in the drug transaction; the State does not intend to introduce any evidence or information obtained from the informant; the drug transaction was conducted between the detective and a man the detective claims was Simmons, not between the informant and Simmons; and the informant was not involved with or even present when the search warrant was executed the day following the drug transaction.
Likewise, in Jones, the informants were active participants. This court noted that the trial court found that the State "knew or should have known that the said witnesses possessed firsthand information material to the charges contained in the Information and would, therefore, be material witnesses for either the State or the defendant." Jones, 247 So.2d at 343. Unlike Jones, the informant in the instant case was merely a "tipster" who played no active role. Detective Pacheco testified that he did not obtain "Coco's" contact information because he never anticipated that "Coco" would be a material witness as 1) Coco was not an active participant and not involved in the drug transaction; 2) the conversations between the detective and Simmons were in English and "Coco" knew very little English; and 3) he did not intend to use "Coco" in the future. Thus, neither of the elements present in Jones is present in this case. The informant was not an active participant and the officers did not know and had no reason to believe he could become a material witness. In fact, the trial court in the instant cases found the officers' testimony to be credible, found no bad faith on their part, and concluded that the failure to obtain the informant's contact information was not done in "an effort to subvert a possible future defense of misidentification."
In Fuentes, this court reversed the trial court's dismissal of the charges, which was granted based upon the State's inability to produce the informant. This court concluded that dismissal was not warranted, even though the informant was present during the drug negotiations and transactions, as he was not an active participant and the State's conduct in failing to maintain contact with the informant was "more accurately described as negligence, rather than deliberate ignorance." Fuentes, 563 So.2d at 97 (citations omitted).
Similarly, in Zamora, this court specifically noted that this was not a Roviaro situation which requires disclosure of an informant where the defendant is charged with selling or delivering illegal drugs to the informant, Zamora, 534 So.2d at 869 *1129 (citing Roviaro, 353 U.S. 53, 77 S.Ct. 623), or where the State calls the informant as a witness at trial, Zamora, 534 So.2d at 869 (citing State v. Hassberger, 350 So.2d 1 (Fla.1977)), or where the informant executes the affidavit upon which a search warrant is issued for the search of the defendant's home, Zamora, 534 So.2d at 869 (citing Baker v. State, 150 So.2d 729 (Fla. 3d DCA 1963)).
The State's reliance on McCray is also misplaced. In McCray, the Second District Court of Appeal merely held that the trial court had erred in denying the defendant's motion to compel disclosure of the confidential informant without conducting an in-camera hearing. McCray, 730 So.2d at 818.
Miller, cited to by Simmons, actually supports a finding contrary to his position. In Miller, the Fourth District Court of Appeal did not hold that dismissal was required due to the State's failure to produce a confidential informant. The appellate court reversed and remanded based upon the trial court's failure to conduct an in-camera hearing. In doing so, the Fourth District specifically noted that:
The fact that the confidential informant was present during the drug transaction does not automatically compel his disclosure, see State v. Carnegie, 472 So.2d 1329, 1330 (Fla. 2d DCA 1985), nor does the failure of the state to disclose the identity of a confidential informant upon court order automatically entitle a defendant to dismissal of the charges. See State v. Banks, 656 So.2d 590 (Fla. 2d DCA 1995). There must be a determination as to the necessity for disclosure, government misconduct, and prejudice to the accused. See id.

Miller, 729 So.2d at 420. More importantly, the informant in Miller was an active participant. He is the one who allegedly purchased the drugs from the defendant, and disclosure of a confidential informant is required where the defendant is charged with selling or delivering illegal drugs to a government informant. Roviaro, 353 U.S. 53, 77 S.Ct. 623.
The United States Supreme Court specifically limited its holding in Roviaro to the particular facts of the case. Roviaro, 353 U.S. at 64, 77 S.Ct. 623. In Roviaro, the informant helped set up the transaction and played a prominent part in it; the informant and the defendant were alone and unobserved during the crucial occurrence for which the defendant was indicted; the government introduced at trial the informant's conversation with the defendant without the defendant having the ability to cross-examine the informant; the informant was the sole participant, other than the defendant, in the transaction; and a government witness testified that the informant had told him/her that he did not know the defendant and had never seen him before. None of those factors are present in the instant cases.
The issue is one of due process, whether the failure to preserve potentially exculpatory or useful evidence deprives the defendant of due process, requiring dismissal of the charges against the defendant. "The dismissal of a [criminal] charge is the most severe sanction a court can impose for the destruction of evidence; it is to be used with the greatest caution and deliberation." State v. Thomas, 826 So.2d 1048, 1049 (Fla. 2d DCA 2002) (citing State v. Westerman, 688 So.2d 979 (Fla. 2d DCA 1997)); see also State v. Gomez, 915 So.2d 698, 700 (Fla. 3d DCA 2005). When dealing with potentially exculpatory or useful evidence which is not preserved or is permanently lost, "courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." California v. Trombetta, 467 U.S. 479, 486, 104 S.Ct. 2528, 81 *1130 L.Ed.2d 413 (1984)(citing United States v. Valenzuela-Bernal, 458 U.S. 858, 870, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)).
While the State has a constitutional duty to preserve evidence, the United States Supreme Court has specifically held that the
duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.
Trombetta, 467 U.S. at 488-89, 104 S.Ct. 2528 (footnote omitted and emphasis added).
Additionally, where the destroyed evidence is determined to have been potentially useful, as opposed to materially exculpatory evidence, a due process violation requires a showing of bad faith on the part of the State. Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); Gomez, 915 So.2d at 700.
Regarding the April 4th drug transaction, Simmons claims that he is not the individual who sold the drugs to the undercover detective and alleges that the individual who was present during the transaction, if produced, would testify consistent with this defense. This claim, however, is nothing more than pure speculation and perhaps wishful thinking by the defendant. He does not claim that he and this individual knew each other, does not assert that they have had any dealings with each other, and has not provided any information in support of his claim. We can only, therefore, conclude that the evidence may have been potentially useful. Thus, pursuant to Youngblood, bad faith on the part of the State must be shown. As the trial court found no bad faith, it was error to dismiss the charges. Specifically, the trial court stated in its Order Granting Defendant's Motion to Dismiss the Information in both cases as follows:
The court found the testimony of both Officer Cabrera and Detective Pacheco to be credible, and further found that their failure to obtain the informant's contact information was not in bad faith in an effort to subvert a possible future defense of misidentification.
It was error to dismiss the charges against the defendant absent bad faith, especially since under the circumstances herein presented, the State did not have a constitutional duty to identify the witness or otherwise "preserve" him as a witness, as law enforcement could not have anticipated that he might have played a significant role in the defendant's defense. United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); United States v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Gomez, 915 So.2d at 700. The witness did nothing more than identify a house where drugs were being sold. He did not offer any information as to the individual(s) selling drugs at that location, did not say that he had ever purchased drugs at that location, and was not involved in the drug purchase by the undercover detective other than to accompany him to the house. Thus, even if we were to conclude that the witness possessed exculpatory evidence, that fact clearly was not apparent at the time. I would, therefore, find that based upon the facts presented and the trial court's finding of no bad faith by the State, that the failure to identify and to preserve "Coco" as a witness does not deprive the defendant of due process requiring the dismissal of the charges against him.
*1131 I, therefore, join with the majority in concluding that the trial court erred in dismissing the charges in case number 02-9991, for the reasons stated in both this concurrence and the majority opinion, but respectfully dissent regarding the majority's failure to find that the trial court also erred in dismissing the charges in case number 02-9992, for the reasons stated in this dissent.
NOTES
[1] Simmons v. State, 887 So.2d 1283 (Fla. 2004), rev'g 887 So.2d 355 (Fla. 3d DCA 2003).
[2] "Rulings as to the necessity of providing the names and addresses of witnesses for the defendant to have a fair trial are rulings which must of necessity rest upon the broad discretion of the trial court." State v. Jones, 247 So.2d 342, 343 (Fla. 3d DCA 1971).