678 So.2d 1341 (1996)
The STATE of Florida, Appellant,
v.
Mauricio P. DIAZ and Cesar Ubillus, Appellee.
No. 95-730.
District Court of Appeal of Florida, Third District.
July 31, 1996.
*1342 Robert A. Butterworth, Attorney General and Mark Rosenblatt, Assistant Attorney General, for appellant.
Leonard F. Baer and David Abrams, Coral Gables, for appellee.
Before GODERICH, GREEN and FLETCHER, JJ.
GREEN, Judge.
The State of Florida appeals an order dismissing this case against appellees Mauricio Diaz and Cesar Ubillus. The trial court dismissed the information when the state refused to produce a confidential "tipster" for the court's in camera inquiry about whether the tipster had potentially beneficial information for the defense. We affirm the dismissal as to Diaz but reverse as to Ubillus.
Diaz, Ubillus and three other codefendantsWilliam Jesus Rodas, Yadher Reyes, and Alberto Martin Floreswere charged by information with trafficking and conspiring to traffic in 400 grams or more of cocaine. Two of these other codefendants pled guilty and became state witnesses against Diaz and Ubillus. A recitation of the undisputed facts before the trial court is necessary. All of such facts are based upon the sworn testimony of the state's witnesses during discovery.
This case began when a "tipster" told a documented police confidential informant that the tipster knew someone who wanted to sell 15 kilos of cocaine. The tipster was acquainted with the documented police informant but the tipster was not a documented police informant.[1] Upon receiving this information, the confidential informant relayed *1343 the same to the state's lead detective in this case, K.A. Halburian. Detective Halburian and other police officers thereafter devised a plan for the purchase of the cocaine. Throughout the course of this investigation, Halburian never ascertained the identity of the tipster. Nor did Halburian and the other police officers ever ascertain the identity of the individual referred to by the tipster as the seller or source of the cocaine.[2] Indeed, to date, none of the state's witnesses can testify whether any of the individuals arrested and charged in this prosecution includes the person referred to by the tipster to the police informant.
After other police officers met with both the confidential informant and the tipster, a detective Fernandez, acting in an undercover capacity, arranged for the purchase of the cocaine in the front yard of a particular home. Diaz never negotiated or spoke with detective Fernandez about the proposed drug transaction. Diaz was not an occupant in the car which transported the cocaine in an opaque cookie tin to the meeting site with the undercover officers. Further, Diaz was not present at the scene when the transaction was consummated, the cocaine was seized and the codefendants were arrested.
At or about the time of the transaction, Diaz was observed at a nearby convenience store having at least two conversations with codefendant Flores. Flores testified that he never had any discussions about the drug sale with Diaz but Diaz was present when Flores spoke with codefendant Rodas about the deal.
Rodas, who pled guilty and became a witness for the state, is the only witness to point to Diaz as the source of the cocaine. Specifically, Rodas testified that prior to the transaction with the police, Diaz stated that he had 2 kilograms of cocaine to sell. Rodas testified that he then contacted codefendant Ubillus, who in turn contacted codefendant Reyes. Rodas further testified that he brought Diaz to a meeting with Reyes and then to a subsequent meeting with Reyes and Ubillus. Rodas stated that it was at this later meeting that 2 kilograms of cocaine were furnished by Diaz to the other codefendants for the transaction with the undercover police. Rodas testified that the proposed deal was always a 2 kilogram transaction but both detectives Halburian and Fernandez disputed this statement and testified that the deal was always a 15 kilogram transaction.
The trial court specifically found that the deposition testimony of Flores and Reyes[3] contradicted that of Rodas in that neither Flores or Reyes claimed to have received cocaine from Diaz nor did they claim to have met Diaz for the purpose of orchestrating or discussing the proposed drug transaction.
It is against this factual backdrop adduced during discovery that Diaz filed his motion to compel disclosure of the identity of the tipster. Diaz's sworn proffered defense to this action was that of mere presence. Diaz reasoned that if the tipster identified someone else as being the seller or source of the cocaine, his defense would be substantially bolstered at trial. Ubillus never proffered any defense nor did he file a separate motion to compel. Ubillus merely adopted Diaz's motion to compel in an unsworn motion.
At the hearing on this motion, the trial court ruled that the defendants could redepose detective Halburian to inquire of the identity of the tipster. When the detective was redeposed, he stated that he did not know the tipster's identity and refused to acquire such knowledge from the confidential informant. Thereafter, Diaz filed a second motion to compel the identity of the tipster which was also adopted by Ubillus. Diaz argued, among other things, that the tipster's identity was necessary because of the conflicting testimony among the state's witnesses as to the source and amount of the drugs. Diaz reasoned that he needed the tipster for a determination of whether the tipster could corroborate any of the testimony from the state's conflicting witnesses. The trial court partially granted the motion *1344 and ordered the state to produce the tipster for an in camera inquiry by the court so that the court alone could make a preliminary determination of whether the tipster had any exculpatory information for the defense.[4] When the state refused to procure the tipster even for this purpose, the court dismissed the case and this appeal ensued.
The state argues on this appeal that the defendants did not meet their burden of overcoming the state's limited privilege of the nondisclosure of its confidential tipster.
The state, without question, enjoys a limited privilege to withhold the identity of its confidential informants. State v. Hassberger, 350 So.2d 1, 2 (Fla.1977); Treverrow v. State, 194 So.2d 250, 252 (Fla.1967); State v. Zamora, 534 So.2d 864, 867 (Fla. 3d DCA 1988); Spataro v. State, 179 So.2d 873, 878 (Fla. 2d DCA 1965); State v. Hardy, 114 So.2d 344, 346 (Fla. 1st DCA 1959); Harrington v. State, 110 So.2d 495, 497-98 (Fla. 1st DCA), appeal dismissed, 113 So.2d 231 (Fla.1959). The sound public policy reason behind this privilege was succinctly articulated in the seminal case of Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957) wherein the United States Supreme Court stated:
The purpose of the privilege [of nondisclosure] is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
The state's privilege, however, is not without exception and must yield "[w]here the disclosure of an informer's identity, or the contents of his communication, [1] is relevant and helpful to the defense of an accused, or [2] is essential to a fair determination of a cause." 353 U.S. at 60-61, 77 S.Ct. at 628; see also Hassberger, 350 So.2d at 2; Zamora, 534 So.2d at 867 (quoting Roviaro.) The burden is on the defendant seeking disclosure of information on the confidential informant to establish why either or both of these exceptions should be invoked. Zamora, 534 So.2d at 868.
As to the first Roviaro exception, we note that Diaz has set forth a viable defense to the charges.[5] We further conclude that it has been adequately demonstrated on this record that if the tipster actually made reference to someone other than Diaz as being the seller or source of the cocaine in the tipster's initial conversation with the confidential informant, this evidence would be material to rebut the testimony of Rodas, the state's sole witness against Diaz. As we view the state's evidence adduced to date through the discovery of its witnesses, the state's entire case against Diaz rests solely upon the testimony and credibility of this former codefendant. Diaz was not present at the scene of the transaction and the police found no drugs on Diaz. To the extent that the tipster points the finger at someone other than Diaz as being the source of the drugs, disclosure of the tipster may be compelled to rebut Rodas's testimony. Harrington, 110 So.2d at 497 (stating disclosure may be compelled "when necessary to avoid the risk of false testimony or to secure useful testimony"). Given the sparsity of evidence against Diaz to date we cannot, as urged by the state, characterize the tipster as merely a person who provided a lead in the investigation of this case so as to preclude disclosure. See State v. Matney, 236 So.2d 166, 169 (Fla. 1st DCA 1970). Thus, in a close case such as this, where Diaz has set forth a viable defense of mere presence and demonstrated that the tipster has relevant and material evidence which may support the defense and rebut the state's evidence, the trial court did not err in ordering an in camera inquiry of the tipster. Garcia v. State, 548 So.2d 284 (Fla. 3d DCA 1989); see also Zamora, 534 So.2d at 868-69 (quoting State v. Acosta, 439 So.2d 1024, 1027 n. 2 (Fla. 3d DCA 1983)).
*1345 Appellee Ubillus's failure to set forth a valid defense, on the other hand, is sufficient alone to defeat his ability to seek disclosure of the tipster under the first Roviaro exception. Hawkins v. State, 312 So.2d 229 (Fla. 1st DCA 1975); State v. Davis, 308 So.2d 539 (Fla. 3d DCA 1975); Doe v. State, 262 So.2d 11 (Fla. 3d DCA 1972). We therefore turn our attention to the second Roviaro exception to determine whether Ubillus has met his burden of demonstrating that disclosure of the tipster is essential to his due process right to a fair determination of this cause. Unlike the first Roviaro exception, the second exception does not require a defendant to proffer any valid defense to the charges or demonstrate that the confidential informant has exculpatory evidence for the defense. See Zamora, 534 So.2d at 868. The second Roviaro exception has been construed as an inquiry into whether disclosure of the confidential informant is necessary for the defendant's "right to be informed of the crime with which he is charged" or for the defendant "to confront [and cross examine] the witnesses against him." Zamora, 534 So.2d at 869.[6] Again, appellee Ubillus never contended that he has not been fully apprised of the charges against him or that the disclosure of the tipster is critical for him to adequately confront his accusers. Simply put, he has failed to meet his burden under the second Roviaro exception. Thus, we conclude that the dismissal of this cause as to Ubillus was error.
Accordingly, we affirm the order of dismissal as to appellee Diaz but reverse as to appellee Ubillus.
Affirmed in part and reversed and remanded in part.
NOTES
[1] The tipster was apparently aware of the fact, however, that the confidential informant worked for the police.
[2] Halburian opined in his deposition, however, that Diaz was the source of the drugs.
[3] In the order granting defendant's second motion to compel identity of the tipster, the court through an obvious scrivener's error stated "Rice" for Reyes.
[4] The trial court explained that it was proceeding in this fashion out of an abundance of caution. That is, if the defense was wrong in its assertion, no disclosure of the tipster's identity would be made to the defense.
[5] The State does not dispute that Diaz's mere presence defense is a valid defense to this prosecution.
[6] Zamora cites Monserrate v. State, 232 So.2d 444, 445 (Fla. 3d DCA 1970) (disclosure required where the defendant is charged with selling or delivering illegal drugs to confidential informant); Hassberger, 350 So.2d at 5 (Fla.1977) (disclosure required when the state calls the confidential informant as a witness at trial); Smith v. State, 318 So.2d 506, 508 (Fla. 2d DCA 1975) (disclosure required where the confidential informant is a defense witness at trial and the defendant seeks to cross examine a police officer concerning the informant's identity and active involvement in the charged illegal drug transaction). cert. denied, 333 So.2d 465 (Fla.1976); Baker v. State, 150 So.2d 729, 730 (Fla. 3d DCA 1963) (disclosure required where informant executes affidavit upon which search warrant is issued for search of defendant's home).